# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 04-368


POLAR BEAR ICE CO., INC.

VERSUS

ANN M. WILLIAMSON, ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 207,979
HONORABLE GEORGE CLARENCE METOYER  JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**JOHN B. SCOFIELD
JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, Marc T. Amy, and John B. Scofield, Judges.

**AFFIRMED**.


**William M. Ford
P. O. Box 12424
Alexandria, LA 71315-2424
Counsel for Plaintiff-Appellant
     Polar Bear Ice Co., Inc.**

**George Carnal Gaiennie,  III
P. O. Box 1871
Alexandria, LA 71309-1871
Counsel for Plaintiff-Appellant
     Polar Bear Ice Co., Inc.**

**Bruce Allen Craft
509 St. Louis St.
Baton Rouge, LA 70802
Counsel for Defendant-Appellee
     Ann M. Williamson and AMW Cold Storage Management, Inc.**

SCOFIELD, Judge[*].

The Plaintiff, Polar Bear Ice Co., Inc. (Polar Bear) filed this claim for breach of contract, tortious interference with contract and unfair trade practices. The trial court found that Defendant, AMW Cold Storage Management, Inc. (AMW) breached the contract but denied the claim against Ann M. Williamson (Williamson) tortious interference with the contract. The trial court also denied the claims for unfair trade practices against both AMW and Williamson. For the reasons set forth hereinafter, we affirm.

FACTS

Polar Bear, a Louisiana Corporation domiciled in Alexandria, is in the cold storage business. On March 16, 2000, Polar Bear, under the trade name of Alexandria Ice and Cold Storage, entered into a contract with AMW styled "Lease/Handling Agreement" (the Lease). The Lease recognizes that AMW had anticipated making a bid to the State of Louisiana to provide state-wide cold storage services to the Louisiana Department of Agriculture; that AMW did not have its own cold storage facilities in the Alexandria area; and that in order to meet its obligation to provide storage space to the State, AMW desired to lease such storage space from Polar Bear. The Lease further provided that AMW would pay Polar Bear specified sums on a monthly basis for various categories of storage space.

The Lease was negotiated by Robert A. Moore on behalf of Polar Bear, Mr. Moore having died prior to this suit having been filed. Williamson had negotiated the Lease on behalf of AMW. At all times pertinent hereto, Williamson was the sole incorporator, stockholder, director and officer of AMW.

---

[*]Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

AMW eventually was awarded the state-wide storage contract and began paying Polar Bear the specified rental beginning in June of 2000. However, in November 2001, AMW significantly reduced its monthly payments to Polar Bear, presumably because there had been a reduction in the payments AMW was receiving from the state.

A significant fact bearing upon the procedural aspects of this case is that prior to the trial, criminal charges were lodged against Williamson, presumably emanating from the AMW state-wide cold storage contract. The record does not reflect whether these charges were still pending at the time of trial. Nevertheless, Williamson's Fifth Amendment rights attendant to her criminal charges became a factor in these proceedings.

TRIAL COURT PROCEEDINGS

Polar Bear filed this suit against AMW and Williamson contending that Defendants were individually, jointly and solidarily liable to Polar Bear for damages, attorneys fees, interest and costs because of the deficiencies in the rental payments made pursuant to the Lease. AMW is claimed to have breached the Lease. Williamson is alleged to have tortiously induced this breach. Polar Bear further claims that both Defendants violated the Louisiana Unfair Practices Act.

A bench trial resulted in a finding that AMW had breached the Lease, resulting in a judgment being rendered against AMW in the amount of $312,130.05, together with interest and costs. All claims against Williamson were dismissed as were the unfair trade practices claims against AMW.

Judgment was signed on August 13, 2003, and AMW's motion for a new trial was denied. Polar Bear devolutively appealed. No appeal was filed by AMW.

ISSUES

The issues in this appeal are Polar Bear's claims that the trial court erred in not finding that Williamson tortiously interfered with the contract, and in not allowing Polar Bear to offer into evidence certain documentary evidence allegedly supporting the claims against Williamson. Polar Bear also contends that the trial court erred in not granting its unfair trade practices claims against either defendant.

DISCUSSION

THE PRINCIPAL CLAIM AGAINST WILLIAMSON

Polar Bear contends that Williamson is liable because she tortiously interfered with the Lease Contract, citing in support of this claim the landmark case of *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La.1989). Polar Bear correctly quotes from *9 to 5* as to the requisite proof necessary to establish a tortious interference with contract claim:

> For purposes of analysis, the action against a corporate officer for intentional and unjustified interference with contractual relations may be divided into separate elements: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*Id.* at 234. *See also Technical Control Systems, Inc. v. Green*, 01-0955 (La.App. 3 Cir. 2/27/02), 809 So.2d 1204.

For one to establish liability for tortious interference with contract, all five of the evidentiary requirements of *9 to 5* must be proven. In this case, we find the evidence lacking in two of the categories, *i.e.*, item three, requiring proof that Williamson intentionally induced or caused AMW to breach the contract, and item

3

four, proof that there was no justification for Williamson's actions. Given Williamson's dominant position with AMW, it could arguably be assumed that Williamson intended that the corporation breach the contract. However, there was no direct proof of her intent in this respect. There was no evidence that her intent was contrary to the best interests of the corporation. The clincher is that Polar Bear failed to prove that Williamson had no justification in inducing the lowering of the monthly payments made to Polar Bear. As Justice Dennis stated in *9 to 5:*

> The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.

*9 to 5 Fashions, Inc.*, 538 So2d at 231.

Williamson did not testify in these proceedings. There was testimony from Herschel Abbott, lawyer who had represented AMW and Williamson. Mr. Abbott testified that the state had reduced rental payments it was making to AMW and because of this, he had advised AMW to reduce its payments to Polar Bear. He further testified that according to his interpretation of the Lease, it permitted such a reduction. In fact, Mr. Abbott wrote a letter to Polar Bear giving notice of the reduced payments by the state and that his interpretation of the Lease was that this would permit a reduction in the payments from AMW to Polar Bear.

Polar Bear disagrees with AMW's interpretation of the Lease and further argues that the cutting of payments by the state was not the real reason AMW began paying less to Polar Bear. In short, Polar Bear argues that AMW and Williamson were not justified in reducing the payments. Polar Bear complains bitterly that the trial court refused to allow Polar Bear to offer evidence which would prove Williamson's lack of justification in inducing AMW to pay less to Polar Bear. We

4

have carefully viewed the evidence proffered by Polar Bear and have failed to find any that would satisfy Polar Bear's burden of proof in this regard.

The most significant deficiency in Polar Bear evidence, proffered or otherwise, is its failure to call Williamson as a witness. During pre-trial discovery, the deposition of Williamson had been scheduled, as well as the 1442[1] deposition of AMW. The procès verbal of this deposition–which was proffered by Polar Bear after its being filed into evidence was denied by the trial judge– indicates that prior to the deposition, the parties had agreed that Williamson would not have to testify at this deposition, presumably on the basis of her Fifth Amendment rights attendant to her pending criminal charges. Williamson, therefore did not testify at this deposition, either on her own behalf, or as the corporate representative of AMW. The proffered procès verbal identifies various documents that were produced at the deposition by AMW pursuant to subpoena duces tecum. None of these documents appears to materially bear on Williamson's intent or justification in causing the reduction of payments to Polar Bear.

Williamson's deposition was again scheduled to be taken just a few days before the trial, there being no indication in the record what stance Williamson would have taken with reference to her Fifth Amendment rights at that deposition. Nevertheless, shortly before this deposition was to be taken, counsel for Polar Bear cancelled it because of a conflict in his schedule.

At the trial itself, Williamson was present, yet Polar Bear chose not to call her as a witness. Polar Bear could have called Williamson as a witness and posed questions to her regarding her intent and justification (or the lack thereof) pertaining

---

[1] La.Code Civ.P. art. 1442 sets forth the procedure for taking depositions of corporations and other entities.

to the lowering of payments to Polar Bear. Even if Williamson were to have refused to answer these questions because of her Fifth Amendment rights, Polar Bear could have at least proceeded to ask Williamson the pertinent questions and then avail itself of the negative inference which the court may draw against a party in a civil case who asserts this privilege and refuses to answer questions. *See Boyd v. Boyd*, 26,292 (La.App. 2 Cir. 12/7/94), 647 So.2d 414; *Miles v. Louisiana Landscape Specialty, Inc.*, 97-118 (La.App. 5 Cir. 6/30/97), 697 So.2d 348. Inexplicably, Polar Bear chose not to call Williamson as a witness.

Since Williamson was never called upon to answer any questions, never formally invoked her Fifth Amendment rights, no negative inferences could be drawn by the trial court, or by this court. Even considering the evidence that was proffered by Polar Bear, there is no proof in this record that Williamson did not act "within the scope of [her] authority" and no proof that she did not have "the reasonable belief that [her] action was for the benefit of the corporation." *9 to 5 Fashions, Inc.*, 538 So.2d at 231. Consequently, there is no merit in Polar Bear's contention that the trial court erred in not allowing into evidence the proffered documents. Accordingly, we find no error in the trial court's dismissal of the tortious interference with contract claims against Williamson.

THE UNFAIR TRADE PRACTICES CLAIM

Polar Bear contends that the breach of the Lease by AMW and Williamson "was unfair, deceptive, immoral, unethical, oppressive, and was an unscrupulous act and practice designed and intended to cause substantial injury and damage to Polar Bear" and that this was a violation of the Louisiana Unfair Trade Practices Act, La.R.S. 51:1401, *et seq*. Because some litigants have attempted to take some of the

6

broad language of the Unfair Trade Practices Act out of context and urge its application to routine business misunderstandings and because the act is penal in nature, our courts have carefully avoided applying the act to other than the more egregious circumstances. Indeed, that is the intent and purpose of the act. "The statute is penal in nature and subject to reasonably strict construction." *Levine v. First Nat. Bank of Commerce*, 02-1114 (La.App. 5 Cir. 4/29/03), 845 So.2d 1189, 1193; *See also Cajun Restaurant and Bar, Inc. v. Maurin-Ogden 1978 Pinhook Plaza*, 574 So.2d 536, (La.App. 3 Cir. 1991).

We find no evidence in this record sufficient to sustain a claim under the Louisiana Unfair Trade Practices Act. Indeed, given our finding that Polar Bear has failed to prove Williamson's ill-intent or lack of justification necessary to sustain a claim against her for tortious interference with a contract, it seems axiomatic that the same evidence would not rise to the level necessary to support a claim under the Unfair Trade Practices Act. To the contrary, the much stronger evidence is that Williamson acted under advice of counsel and under the belief that the Lease permitted the reduction of rental payments in the event the state were to lower its payments to AMW.

While we do not disagree with the trial court's finding that the Lease did not justify or permit the reduction in the rental payments by AMW, an issue that is not before us in this appeal, we cannot conclude that Williamson was not acting in the best interests of AMW in effecting the reductions in the payments to Polar Bear, especially when this was done on advice of counsel.

In sum, we find this case to be one of breach of contract and nothing more.

For the foregoing reasons, we affirm the decision of the trial court and assess

7

the costs of this appeal to Polar Bear.

AFFIRMED.